## BYRON JACKSON CO. v. PATTERSON-BALLAGH CORPORATION et al.

### No. 10473.

Circuit Court of Appeals, Ninth Circuit.

Sept. 25, 1944.

Chickering & Gregory, Donald Y. Lamont, Frederick M. Fisk, and Stephen A. Duhring, all of San Francisco, Cal., and Lyon & Lyon, Leonard S. Lyon, and Irwin L. Fuller, all of Los Angeles, Cal., for appellant.

Musick, Burrell & Pinney, Howard Burrell, and Anson B. Jackson, Jr., all of Los Angeles, Cal., for appellees.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal by a stockholder in appellee corporation in a derivative stockholder's suit, from a judgment holding that the appellees Ballagh and Miller, directors of the appellee corporation, were legally paid certain compensation for services rendered the latter corporation.

The suit is at common law for a money damage for the claimed wrongful acts of the directors. Though fraud is alleged, no accounting or other equitable relief is sought. The remedy at law of money damages is adequate and the only one sought. The jurisdiction of the district court is based upon the diversity of citizenship be-

tween appellant, a Delaware corporation, plaintiff below, and the appellee corporation, organized under the laws of California, and the appellee directors, citizens of California, defendants below.

Appellee corporation is engaged in the business of supplying to those drilling wells for mineral oils various special devices to facilitate such business. The evidence shows the business is highly competitive and that continued improvements patented and otherwise require a management active in seeking to keep ahead of competitors.

At all pertinent times the appellee directors controlled through direct or beneficial ownership 75 percent of the capital stock of the appellee corporation, the appellant owning the remaining 25 percent. There were five members of the board. Two were employees of the corporation. These four dominated the board action. Appellant's president was the remaining director who acted as "representative" of the plaintiff appellant.

The complaint charges a fraudulent combination of the two dominant directors by which, in the calendar years 1939, 1940 and the portion of 1941 up to September 10, 1941, when the suit was filed, to pay themselves excessive salaries. There is no evidence of fraudulent combination other than can be inferred from the size of the salaries and the appellant confines its claim here to the question whether the salaries of Ballagh and Miller (during the years 1939 and 1940 and that part of the year 1941 prior to September 10) were excessive.

*Appellee Ballagh's Salary.* What here concerns us is the evidence from which inferences may be drawn supporting the court's finding that Ballagh's and Miller's compensation while directors was not excessive for the character of the services rendered the corporation in the production of the specialty devices in oil drilling. Unlike corporations dealing in basic commodities, the profits in these specialties were very high, both with respect to the invested capital and total sales. It required inventive capacity to keep ahead of the constantly improving devices of the company's competitors. Appellant's president, Director Dulin, recognized this when in 1938 he favored an increase in the salaries of Ballagh and Patterson (predecessor as president to appellee Miller) from the rate of $12,000 a year to $18,000 a year each. That is to say, $36,000 a year for such salaries when in the year 1939 the

sales, less discounts, were but $271,910. The aggregate salaries voted and paid Ballagh and Miller for the two and two-thirds years in question according to appellant's brief and the findings amount to $108,916.66. On the amount appellant admits is proper for such services for that period they would have amounted to $96,000. The question here resolves itself into the determination whether $12,916.66 difference, which the district court could infer appellant's admission made the only amount of which it could complain, was, as held by the court, "fair, just and reasonable" and voted "in good faith" by the directors, or whether such a holding is clearly erroneous.

■ Appellant has no basis for its claim of excessive salaries paid in 1939, the first year for which its complaint seeks damages. They totalled but $28,000, $8,000 less than the conceded $36,000.

■ Ballagh was nominally secretary and treasurer of the corporation, but appellant's approval of a salary of $18,000 per year disposes of its contention that his compensation should be confined to his official duties.

The business of making and selling oil drilling devices was originated by him prior to 1928, when he caused the incorporation of the company. He was in charge of sales and in addition an inventor, though prior to 1938 the corporation employed others to create new devices. From the latter part of 1938 he devoted practically all of his time during daylight hours to the work of the corporation and spent at least three nights a week at home working on various inventions and other sales work for the company. He acted as sales manager and had charge of the advertising and in addition handled certain important patent litigation both in Oklahoma and California. He took no vacations. As a result of this Ballagh devised a number of new articles for manufacture and sale, among which were a lip protector, the Hydraulic applicator, the sucker rod protector, the pipeline wiper, and a plastic tubing protector. The nature, purpose of and gross profits on all of these items were described by Mr. Ballagh in his testimony. The lip protector is an improvement on the invalidated Bettis protector, on which depended a large part of the prior business of the corporation. On this the company has no competition. The Hy-

draulic applicator affords an improved means for installing protectors on the pipe which further reduces competition on protectors generally and resulted in acquiring for the company many new customers in the mid-continent field and in California, among which are the Associated Oil Company, the Shell Company, the Union Oil Company, the Barnsdall Company, the Richfield Oil Company, Bellridge Oil Company and the Texas Company. All of these devices were developed and placed on the market from about the beginning of 1939 and during the three-year period here involved. Each of them more than doubled in sales in each sucessive year as is graphically shown by a chart in evidence.

The patents procured by Ballagh during this period were held for the company. No royalties were charged. The patents and improvements, including that on the invalid Bettis patent, showed constantly increasing sales during the years in question.

In 1939 Ballagh received $3,000 less than the $18,000 appellant in 1938 thought proper for him. In 1940 he was voted and received $30,166.66—that is to say, for the years 1939 and 1940 for which the district court could infer appellant thought $36,000 was proper, Ballagh received $45,000. The difference is $9,000. In 1941 to September 10, he received $19,000, or for the year at the rate of $24,000,—$6,000 over what the district court well could infer as admitted to be reasonable.

There is evidence of Ballagh's inventive contributions and energy in producing the constantly increasing sales in the period in question from which the district court could infer that the compensation paid Ballagh was "fair, just and reasonable" and voted by a proper quorum of the board "in good faith." It seems large to us, but with the peculiar character of the business and its requirements for inventive genius and selling capacity, and in view of the supporting testimony of witnesses heard by the district court, we cannot say that the court's findings are "clearly erroneous."

*Appellee Miller's Salary.* Miller succeeded to the directorship of Patterson, for whom appellant admitted a salary of $18,000 a year was proper. Miller was elected president and made general manager of the business. He was also an inventor and perfected devices for aid in oil drilling. He received $13,000 in 1939. In 1940, $19,750; and for the nine months in 1941,

$12,000. That is to say an average of less than $15,000 per year for the three years. At a directors' meeting in March, 1940, appellant's President Dulin voted him a salary of $1500 per month, or $18,000 per year. There is testimony heard by the district court that his compensation is not excessive. We cannot say that the court's finding that appellee Miller's salary was "fair, just and reasonable" and that resolutions passed by the board for such salary were passed "in good faith," are "clearly erroneous."

The judgment is affirmed.